## Disability of State Employes Under Heart and Lung Act

PACKEL, Attorney General, August 1, 1974.—You

have asked several questions regarding Act 193 of June 28, 1935, P. L. 477, as amended, commonly referred to as the Heart and Lung Act, 53 PS §§637, 638.

The Heart and Lung Act provides that State Police, enforcement officers and investigators of the Liquor Control Board, parole agents, enforcement officers and investigators of the Board of Probation and Parole, policemen, firemen, park guards, and members of the Delaware River Port Authority Police, who are injured in the performance of their duties and temporarily incapacitated from performing their duties, shall be paid their full salary until the disability arising therefrom has ceased, together with all medical bills incurred in connection with such injuries.

The act further provides:

"In the case of the State Police Force, enforcement officers and investigators employed by the Pennsylvania Liquor Control Board and the parole agents, enforcement officers and investigators of the Pennsylvania Board of Parole, members of the Delaware River Port Authority Police and salaried policemen and firemen who have served for four consecutive years or longer, diseases of the heart and tuberculosis of the respiratory system, contracted or incurred by any of them after four years of continuous service as such, and caused by extreme overexertion in times of stress or danger or by exposure to heat, smoke, fumes or gases, arising directly out of the employment of any such member of the State Police Force, enforcement officer, investigator or parole agent, enforcement officer or investigator of the Pennsylvania Board of Parole, member of the Delaware River Port Authority Police, or policeman or fireman, shall be compensable in accordance with the terms hereof; . . . It shall be presumed that tuberculosis of the respiratory system contracted or incurred after

four consecutive years of service was contracted or incurred as a direct result of employment."

I. Your first question is whether it is permissible under the Heart and Lung Act for a State agency to request the State Workmen's Insurance Fund (SWIF) to determine the Commonwealth's liability under the Heart and Lung Act.

You are advised that it would be consistent with the intent of the law to allow SWIF to make such a determination for the agencies involved.

However, such a determination would have to be made specifically on the basis of the criteria for determination of compensable diseases and injuries as found in the Heart and Lung Act as opposed to the criteria found in the Pennsylvania Workmen's Compensation Act for compensable diseases and injuries under that Act of June 2, 1915, P. L. 736, 77 PS §1, et seq. See Ryan v. City of Erie, 39 Erie 129 (1956); Baddorf v. City of Harrisburg, 65 Dauph. 86 (1953); 99 C.J.S. §208, et seq.

The State Workmen's Insurance Fund is a fund made up of sums to be paid by employers "for the purpose of insuring such employers against liability under article three of the Workmen's Compensation Act of 1915, and of assuring the payment of the compensation therein provided": 77 PS §221. The State Workmen's Insurance Fund is administered by the State Workmen's Insurance Board, which is part of the Department of Labor and Industry: 77 PS §221; Administrative Code of 1923, Act of June 7, 1923, P. L. 498, as amended, 71 PS §12, Administrative Code of 1929, Act of April 9, 1929, P. L. 177, 71 PS §62.

In most instances, State employes suffering from job-related disabilities who file claims under the Heart and Lung Act, also file claims under the Workmen's Compensation Act of 1915. The procedures

followed by the State Workmen's Insurance Fund in investigating and verifying claims filed under the Workmen's Compensation Act are very similar to those that should take place to investigate and verify claims under the Heart and Lung Act. Thus, the work being done by SWIF for claims filed under the Workmen's Compensation Act of 1915 would have to be duplicated by the agencies involved for those claims filed under both acts.

Section 501 of the Administrative Code provides as follows:

"The several administrative departments, and the several independent administrative and departmental administrative boards and commissions, shall devise a practical and working basis for cooperation and co-ordination of work, eliminating, duplicating, and over-lapping of functions, and shall, so far as practical, cooperate with each other in the use of employes, land, buildings, quarters, facilities, and equipment. The head of any administrative department, or any independent administrative or departmental administrative board or commission, may empower or re quire an employe of another such department, board, or commission, subject to the consent of the head of such department or of such board or commission, to perform any duty which he or it might require of the employes of his or its own department, board, or commission": 71 PS § 181.

It would be consistent with the intent of section 501 of the Administrative Code to allow SWIF to make a determination for the various agencies involved of Commonwealth liability under the Heart and Lung Act, in light of the fact that to do so would avoid duplication of efforts on the part of the Commonwealth.

Although it would be lawful for the agencies involved to allow SWIF to make a determination of li-

ability of the Heart and Lung Act, the law certainly does not require such a procedure and the Commonwealth may choose to allow the agencies involved to proceed to make such determinations themselves or in concert with other Commonwealth agencies.

II. Your second question is whether the term "extreme over-exertion in times of stress and danger" contemplates coverage under the act of heart diseases caused by general exposure to stresses and danger to which any employee is subject, regardless of his/her occupation (such as automobile accidents) or whether coverage under the Act is limited to heart diseases caused by stresses and dangers which are unique to the occupations covered by the act (such as dangers involved in apprehending a criminal).

You are informed that coverage under the act is not limited to heart disease caused by stress and dangers which are unique to the occupations covered by the act.

The plain wording of the act does not indicate that coverage for heart disease under the act is limited to heart disease caused by stresses and dangers which must be unique to the occupations covered by the act. The Statutory Construction Act of December 6, 1972 (No. 290), provides that:

"When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit": 1 Pa. S. §1921.

The courts have held that in order for a claimant to recover compensation for *heart* diseases under the Heart and Lung Act, the claimant has the burden of showing (1) that he/she has heart disease; (2) that such disease has been contracted after four years of continuous service; (3) that the heart disease was caused by extreme over-exertion *in times of stress*

*or danger* or by exposure to heat, smoke, fumes or gases; and (4) that such extreme over-exertion or exposure must have arisen *directly out of the employment of the claimant:* Kurtz v. Erie, 389 Pa. 557, 133 A. 2d 172 (1957); Creighan v. Pittsburgh, 389 Pa. 569, 132 A. 2d 867 (1957). We cannot impose an additional burden on the claimant compelling her/him to show that his/her heart disease has been caused by "stress and dangers" unique to the occupations covered by the Act. It is significant to note, however, that it would very seldom be the case that a claimant could sustain the burden of proving that his/her heart disease was caused by "extreme overexertion in times of stress or danger or by exposure to heat, smoke, fumes, or gases;" unless he/she was performing a duty which is related to the unique functions performed by persons in the covered occupations.*

III. You next ask what a reasonable period of time would be for "stress and danger" to have taken place prior to the occurrent of heart disease. This is a question of fact. Thus, the individual circumstances of each case will have to determine whether the

---

*On April 5, 1968, former Attorney General William C. Sennett, in an unpublished opinion, took the position that the Pennsylvania Constitution requires a specific finding in any case of a work-related injury that the injury resulted from "the dangerous nature of the employment to which other State employees are not exposed," in order for the claimant to receive benefits under the act. For that proposition, he relied on the case of Iben v. Monaca Borough, 158 Pa. Superior Ct. 46, 43 A. 2d 425 (1945). A reading of that case does not convince us that this result is required. Since the court, in that case, found that the classification based on occupation created by the act is constitutional, we think it unnecessary and undesirable to impose any additional conditions on eligibility than the legislature has specifically imposed. See also Geary v. Allegheny Co. Ret. Board, 426 Pa. 254, 231 A.2d 743 (1967); Baxter v. Philadelphia, 426 Pa. 240, 231 A. 2d 151 (1967).

"stress and danger" referred to was the medical cause of the heart disease for which the claimant seeks compensation.

IV. The next question you pose involves a situation in which a person claims compensation for a permanent incapacity under the Heart and Lung Act. You have asked whether the Commonwealth has any obligation under the Heart and Lung Act to provide compensation for such a permanent incapacity, or to pay the medical bills for such a permanent incapacity.

The courts have interpreted the Heart and Lung Act to provide compensation only for temporary and not for permanent disability or incapacity: Creighan v. Pittsburgh, 389 Pa. 569, 132 A. 2d 867 (1957); Kurtz v. Erie, 389 Pa. 557, 133 A. 2d 172 (1957). The act "contemplates total disability, but no liability of any kind attaches if the disability is permanent, though from injury in the performance of duty": Iben v. Monaca Borough, supra, page. 49.

Consequently, you are advised that the Commonwealth has no obligation to provide compensation or medical bills for a permanent incapacity.

V. Your next question involves a situation in which a person has previously been certified by medical authorities to be temporarily incapacitated and has received compensation under the Heart and Lung Act for the incapacity. You ask whether there is an obligation on the part of the employe to reimburse the Commonwealth for compensation paid out under the act if the temporary disability becomes permanent.

You are advised that there is no such obligation on the part of the employe under the Heart and Lung Act. Of course, such an employe, as is any other State employe covered by the act, is obligated to turn over to the Commonwealth any workmen's compensation re-

ceived or collected by him/her for the period he/she receives compensation under the Heart and Lung Act.

The factual situation presented in Creighan v. Pittsburgh, supra, was similar to the situation presented here by you. An employe claimed compensation for a period of time in which he was temporarily disabled as well as a subsequent period of time for which it was deemed that his temporary disability had become permanent. The court in that case awarded the employe compensation for that period of time during which the employe was deemed to be temporarily disabled.

VI. You next pose a situation in which a claimant receiving compensation under the Heart and Lung Act returns to work. You ask whether the Commonwealth would continue to be liable for any medical bills incurred by the claimant subsequent to his/her return to work, if such bills are the result of his/her temporary disability.

The Heart and Lung Act provides that all medical and hospital bills "incurred in connection with" the compensable diseases should be paid by the Commonwealth of Pennsylvania.

Under the Statutory Construction Act of 1972, the provisions of the Heart and Lung Act should be "liberally construed to effect their objects and to promote justice": 1 Pa. S. §1928. The wording "in connection with" is broad enough to include medical expenses incurred by the claimant subsequent to his/her return to work, where the expenses result from a temporary disability for which he/she has been receiving benefits under the Act. Thus, you are advised that the Commonwealth continues to be liable, for medical expenses incurred by the claimant, subsequent to his/her return to work if such bills are the result of his/her temporary disability.

VII. You next pose a situation in which SWIF or the relevant agency makes a determination that an injury or "heart and lung" disease is not compensable under the Heart and Lung Act. You ask what appeal route should be open to the claimant.

You are advised that a determination made by SWIF or the agency involved under the Heart and Lung Act is an "adjudication" within the meaning of the Administrative Agency Law of June 4, 1945, P. L. 1388, 71 PS §1710.1, et seq. "Adjudication" is defined, as "any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities or obligations of any or all of the parties to the proceeding in which the adjudication is made, but shall not mean any final order, decree, decision, determination or ruling based upon a proceeding before a court, or which involves the seizure or forfeiture of property, or which involves paroles, pardons or releases from mental institutions"; 71 PS §1710.2.

You are advised, therefore, that the claimant should be permitted to appeal a denial of benefits under the act to the administrative agency involved and to request an administrative hearing in accordance with the Administrative Agency Law.

VIII. You next state that statutes of limitations apply under the Workmen's Compensation Act for both notifying the employer of the injury and for having claims honored after notification or after payment of compensation. You ask whether these limitations would apply to the act.

You are advised that claims made under the Heart and Lung Act are free from control of statutes of limitations made in other statutes. The act, being silent on statutes of limitations relating to these matters, requires by law that proceedings under the act be

maintained only if begun within a reasonable time, in view of all circumstances of the case: Babcock v. General Motors Corp., Oldsmobile Division, 340 Mich. 58, 64 N. W. 2d 917 (1954); Webb v. Braden & McClure Drilling Co., 150 Kan. 148, 91 P. 2d 576 (1939); Cruse v. Chicago, R.I. and P. Ry. Co., 138 Kan. 117, 23 P. 2d 471 (1933); Thomas v. Williams, 80 Kan. 632, 103 P. 772 (1909).

Given this opinion, if it is foreseen that administration difficulties will ensure, we stand ready to assist you in drafting legislation to amend the Heart and Lung Act to include specific statutes of limitation for notifying the employer of a work-related disability and for filing a claim under the act.